**KAZEROUNI LAW GROUP, APC**
David J. McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
Gustavo Ponce, Esq. (SBN: 343430)
gustavo@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

*Attorneys for Plaintiff,*
Carl Ganz

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL GANZ. on behalf of himself and those similarly situated,<br><br>      Plaintiff,<br><br> vs.<br><br>BEN BELACK GROUP, and UMRO REALTY CORPORATION d/b/a THE AGENCY,<br><br>      Defendant. | Case No.: 3:23-cv-3263<br><br>**CLASS ACTION COMPLAINT**<br><br>**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C §§ 227, ET SEQ.**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.    Plaintiff CARL GANZ ("Plaintiff"), individually and on behalf of the proposed Class defined below, brings this class action lawsuit for damages resulting from the unlawful actions of BEN BELACK GROUP ("BBG") and UMRO REALTY CORPORATION d/b/a THE AGENCY ("UMRO") (together both referred to as "Defendants"). Defendants negligently, knowingly, and/or willfully placed unsolicited automated text messages to Plaintiff and the putative class on their respective cellular phones which are registered with the National Do-Not Call Registry ("DNC"), all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), and related regulations, including but not limited to 47 C.F.R. § 64.1200(c). Plaintiff seeks injunctive and monetary relief for all persons injured by Defendants' unlawful conduct.

2.    Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by Plaintiff's attorneys.

3.    This case is brought to enforce the consumer privacy provisions afforded by the TCPA, a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

4.    Defendants sent a total of eight unsolicited text messages to Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS") for the purpose of soliciting business from Plaintiff.

5.    Defendants sent unsolicited text messages to Plaintiff's cellular telephone on multiple occasions, which was registered with the DNC.

6.    Defendants have violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by using an ATDS to bombard consumers' mobile phones with non-emergency advertising and marketing text messages without prior express written consent.

7.    The TCPA was enacted to protect consumers from unsolicited and unwanted

telephone calls exactly like those alleged in this case.

8.     In response to Defendants' unlawful conduct, Plaintiff seeks an injunction requiring (a) Defendants to cease all unsolicited automated text messages and (b) Defendants to cease all unsolicited text messages to numbers on the DNC, as well as an award of statutory damages to the members of the Class (defined below) per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

## JURISDICTION AND VENUE

9.     This Court has federal question subject matter jurisdiction over this class action lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

10.    Personal jurisdiction is established because Defendant conducts business in the State of California. At all times relevant herein, Defendant conducted business in the State of California, and within this judicial district.

11.    Personal jurisdiction and venue are proper in the Northern District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (1) the conduct complained of herein occurred within this judicial district; and (2) Defendant conducted business within this judicial district at all times relevant. Specifically, Defendant invaded Plaintiff's privacy by contacting Plaintiff on his cellular telephone, while Plaintiff resided in Oakland, California, which is within this judicial district.

12.    Venue is proper in the United States District Court for the Northern District of California pursuant to 18 U.S.C. § 1391 because the conduct complained of herein occurred within this judicial district and many of the acts and transactions giving rise to this action occurred in this district because:

  a) Defendant is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district;

  b) Defendant does substantial business within this district;

  c) Defendant is subject to personal jurisdiction in this judicial district

because Defendant has availed itself of the laws and markets within this district; and,

d) the harm to Plaintiff originated from within this judicial district.

## PARTIES

13.    Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of California, County of Alameda.  Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

14.    Defendant BBG is California company formed under the laws of California with its principal place of business in Beverly Hills, California.

15.    Defendant, UMRO is a California corporation with its principal place of business in Beverly Hills, California.

16.    Defendants are, and at all times mentioned herein was a "person," as defined by 47 U.S.C. § 153(39).

17.    Plaintiff alleges that at all times relevant herein Defendants conducted business in the State of California and in the County of Alameda, and within this judicial district.

18.    Whenever in this Complaint it is alleged that Defendants committed any act or omission, it is meant that the Defendants' officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

## TCPA BACKGROUND

19.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy.…"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. §

227).

20.    The TCPA was designed to prevent calls and messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

21.    Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment, as well as violations of the TCPA's National Do-Not-Call provision of 47 C.F.R. § 64.1200(c).[1]    The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines.  It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems–principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

22.    In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer."  TCPA, Pub.L. No. 102-243, § 11.  Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

---

[1] According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, accessed on June 3, 2021: Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.

KAZEROUNI
LAW GROUP, APC

*Id.* at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

23.    Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call […]." *Id.* At §§ 12-13; *see also, Mims*, 132 S. Ct. at 744.

24.    As Judge Easterbrook of the Seventh Circuit explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act […] is well known for its provisions limiting junk-fax transmissions. A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

25.    The TCPA makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A)(iii)

26.    Text messages are calls and are subject to the TCPA. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009).

27.    47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendants' texts to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone

dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

28.    47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

29.    As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[2] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibit solicitations to residences that use an artificial voice or a recording.

- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."  47 C.F.R. § 64.1200(f)(8).

1    hospital emergency number, a physician's office, a hospital/health care

2    facility/elderly room, a cellular telephone, or any service for which the

3    recipient is charged for the call.

4    •    Prohibit autodialed calls that engage two or more lines of a multi-

5    line business.

6    •    Prohibit unsolicited advertising faxes.

7    •    Prohibit certain calls to members of the DNC.

8    27.    Furthermore, in 2008, the FCC held that "a creditor on whose behalf an

9    autodialed or prerecorded message call is made to a wireless number bears the

10   responsibility for any violation of the Commission's rules."    *In re Rules and*

11   *Regulations Implementing the Telephone Consumer Protection Act, Declaratory*

12   *Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶

13   10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D.

14   Ill., Dec. 31, 2012).

15   28.    Accordingly, the entity can be liable under the TCPA for a call made on its

16   behalf, even if the entity did not directly place the call.  Under those circumstances, the

17   entity is deemed to have initiated the call through the person or entity.

18   29.    With respect to misdialed or wrong-number calls, the FCC recently clarified that

19   "callers who make calls without knowledge of reassignment and with a reasonable

20   basis to believe that they have valid consent to make the call should be able to initiate

21   one call after reassignment as an additional opportunity to gain actual or constructive

22   knowledge of the reassignment and cease future calls to the new subscriber."  *In the*

23   *Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

24   FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015).  "If this one additional call

25   does not yield actual knowledge of reassignment, we deem the caller to have

26   constructive knowledge of such."  *Id.*  Thus, any second call placed to a wrong number

27   violates the TCPA.

28

30.    To state a claim for a violation of the TCPA, a plaintiff must only show that he or she received a call made using an ATDS or featuring a prerecorded voice; consent is an affirmative defense to liability under the TCPA.  *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (finding Defendants "did not show a single instance where express consent was given before the call was placed.")

31.    The TCPA provides for damages in the amount of $500 for each negligent violation and $1,500 for each knowing violation. *See* 47 U.S.C. § 227(b)(3).

## FACTUAL ALLEGATIONS

32.    Defendants are full-service luxury real estate brokerage and lifestyle companies providing services during the home buying and selling process.

33.    In Defendants' overzealous attempt to market its services, however, Defendants willfully or knowingly sent (and continues to send) (a) unsolicited and automated telemarketing text messages without the prior express written consent of the recipients and (b) unsolicited automated telemarketing text messages to persons who have registered their cellular telephone number on the DNC.

34.    Through this conduct, Defendants have invaded the privacy of Plaintiff and the members of the Class.

## FACTUAL BACKGROUND AS TO PLAINTIFF

35.    At all times relevant, Plaintiff was a citizen of the State of California.  Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

36.    Defendant BBG is, and at all times mentioned herein was, a company and a "person," as defined by 47 U.S.C. § 153(39).

37.    Defendant UMRO is, and at all times mentioned herein was, a corporation and a "person," as defined by 47 U.S.C. § 153(39).

38.    At all times relevant Defendants conducted business in the State of California and in the County of Alameda, within this judicial district.

39.    At all relevant times, Plaintiff was assigned, and was the owner of, a cellular

telephone number of ending in 4455 ("Cell Phone").

40.    Plaintiff is the sole user and/or subscriber of his Cell Phone.

41.    Plaintiff's Cell Phone is assigned to him as his personal cellular telephone.

42.    Plaintiff's Cell Phone was added to the DNC on or about October 13, 2007.

43.    Defendants has sent eight text messages to Plaintiff on his Cell Phone,[3] between approximately May 1, 2023, and May 3, 2023, from Defendants' telephone numbers (310) 923-7954, (424) 470-7255, and (818) 651-8455.

44.    On May 1, 2023, at approximately 8:58 a.m., (the "May 1 AM Text"), Defendants sent an automated text message to the Plaintiff's Cell Phone from the telephone number (310) 923-7954.

45.    The May 1 AM Text from Defendants, from Ben Belack of The Agency, began by stating that they had been observing Plaintiff's home for some time and then requested Plaintiff's assistance in understanding why the property had not yet been sold.

46.    The May 1 AM Text also included two images featuring Ben Belack, one listing him as an agent of The Agency, as well as an option to reply "stop" to unsubscribe.

47.    Later that same day, May 1, 2023, at 2:38 p.m., (the "May 1 PM Text") Defendants sent another automated text message to the Plaintiff's Cell Phone, this time using the telephone number (424) 470-7255 and under the name of a different agent, Chris, affiliated with The Agency. Once again, the text raised inquiries regarding the Plaintiff's home.

48.    A few days later, on May 3, 2023, (the "May 3 Text"), Defendants sent another text message to Plaintiff's Cell Phone from the (310) 923-7954 number again around 9:03 a.m.

49.    After receiving May 3 Text, Plaintiff requested that Defendants stop sending him

---

[3]    According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, accessed on June 3, 2021: Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.

text messages by replying with the word "Stop" as requested by Defendants.

50.    However, despite the Plaintiff's explicit request for Defendants to stop, Plaintiff received yet another text message, this time from the phone number (818) 651-8455. The text, supposedly from someone named Ani, stated that they were eager to assist more individuals in the community with their real estate needs.

51.    At no point did the Plaintiff provide consent for any of the text messages received from the Defendants.

52.    Such text messages constitute telephone solicitations pursuant to 47 C.F.R. § 64.1200(c), as they were an attempt to promote or sell Defendants' services.

53.    Plaintiff's Cell Phone number was on the DNC since October 13, 2007.

54.    Plaintiff received at least two telephone solicitations from Defendants within a 12-month period.

55.    Plaintiff did not provide Defendants with his cellular telephone number at any point in time, nor did he give permission for Defendants to message it.

56.    Plaintiff did not have an established business relationship with Defendants during the time of the telephone solicitations from Defendant.

57.    Plaintiff did not have a personal relationship with Defendants at any point in time.

58.    Plaintiff did not give Defendants prior express invitation or consent in writing for Defendants to message Plaintiff's cellular telephone for marketing or solicitation purposes.

59.    The text message Defendants sent to Plaintiff consisted of a pre-written template of impersonal text and was identical to text messages Defendants sent to other consumers.

60.    The language in the message was automatically generated and inputted into a pre-written text template without any actual human intervention in the drafting or sending of the messages; the same exact message was sent to thousands of other consumers.

61. The telephone system Defendants used to send the messages constitutes an ATDS as defined by 47 U.S.C. § 227(a)(1).

62. Upon information and belief, Defendants stored Plaintiff's cellular telephone number in its text messaging system with thousands of other consumers' telephone numbers and then automatically sent identical messages *en masse* to Plaintiff and thousands of other consumers at the same time.

63. Upon information and belief, no human directed any single text message to Plaintiff's number.

64. Receipt of Defendants' unauthorized message drained Plaintiff's phone battery and caused Plaintiff additional electricity expenses and wear and tear on his phone and battery.

65. Defendants sent at minimum three unsolicited text messages to Plaintiff to his Cell Phone which was registered with the DNC, for at least 31 days prior to these unsolicited text messages, in violation of the TCPA, including 47 C.F.R. § 64.1200(c).

66. Upon information and belief, at all relevant times, Defendants failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including the Do-Not Call provision in 47 C.F.R. § 64.1200(c).

67. Defendants did not place the text message for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

68. Upon information and belief, Defendants did not make the telephone solicitations in error.

## **STANDING**

69. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) a valid injury in fact; (b) which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See*, *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016)*; Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### The "Injury in Fact" Prong

70.    Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo*. *Spokeo*, 136 S.Ct. at 1547.

71.    For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists.  *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). In this case, Defendants sent a telephone message to Plaintiff's cellular telephone, using an ATDS. Such text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and *de facto*.

72.    For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." *Spokeo, Inc.*, 136 S.Ct. at 1543.  In this case, Defendants invaded Plaintiff's privacy and peace by texting his cellular telephone, and did this with the use of an ATDS, despite Plaintiff's registering his telephone number with the DNC.    Furthermore, Plaintiff was distracted, inconvenienced, and annoyed by having to take time opening and reading the text message. All of these injuries are particularized and specific to Plaintiff, and will be the same injuries suffered by each member of the putative class.

### The "Traceable to the Conduct of Defendant" Prong

73.    The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that its injuries are traceable to the conduct of Defendant.

74.    The above-mentioned text messages were directly and explicitly linked to Defendants. Defendants' text message identified the Defendants as employed by, "The Agency," the party that attempted to solicit business from Plaintiff. The Agency is an independently owned and operated licensee of UMRO Realty Corp. This text message is the sole source of Plaintiff's and the Class's injuries. Therefore, Plaintiff has illustrated facts that show that his injuries are traceable to the conduct of Defendants.

### The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong

75.     The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

76.     In the present case, Plaintiff's Request for Relief includes a request for damages for each text message made by Defendants and telephone calls to cellular numbers on the DNC, as authorized by statute in 47 U.S.C. § 227.  The statutory damages were set by Congress and specifically redress the damages suffered by Plaintiff and the members of the putative class.

77.     Because all standing requirements of Article III of the U.S. Constitution have been met, Plaintiff has standing to sue Defendants on the stated claims.

## **CLASS ACTION ALLEGATIONS**

78.     Plaintiff brings this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the following classes, which are defined is follows:

**ATDS Class:**
All persons throughout the United States (1) to whom Defendants delivered, or caused to be delivered, a text message, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system, (4) without prior express consent in writing from said person to receive such text messages, (5) within four years preceding the date of this complaint through the date of class certification.

**Do-Not Call Class:**
All persons within the United States (1) registered on the National Do-Not-Call Registry for at least 31 days, (2) who received more than one telephone solicitation (3) made by or on behalf of Defendant, (4) for the purpose of promoting Defendants' goods or services, (5) within any twelve-month period, (6) within the four years prior to the filing of the Complaint.

79.     Excluded from the class are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants has or had a controlling interest.

80.    Plaintiff reserves the right to redefine the classes and to add subclasses as appropriate based on discovery and specific theories of liability.

81.    Plaintiff and the members of the Class were harmed by Defendants' acts in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class *via* their cellular telephones using an artificial and/or pre-recorded voice, thereby causing annoyance to Plaintiff and the Class and also invading the privacy of Plaintiff and the Class.

82.    Further, Plaintiff and members of the Class were harmed by the acts of Defendants in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their telephones, whether cellular telephones or otherwise, for solicitation purposes, thereby invading the privacy of said Plaintiff and the Class members whose cellular telephone numbers were on the DNC.  Plaintiff and the Class members were damaged thereby.

83.    <u>Numerosity</u>: Upon information and belief, the members of the class are so numerous that joinder of all of them is impracticable.

84.    The exact number of the members of the class is unknown to Plaintiff at this time, and can (and will) be determined through appropriate discovery. However, given that, on information and belief, Defendants texted thousands of class members nationwide during the class period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of the claims in a class action will provide substantial benefits to the parties and the Court.

85.    <u>Ascertainability</u>: The members of the class are ascertainable because the class is defined by reference to objective criteria.

86.    In addition, the members of the class are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendants and by third parties.

87.    <u>Typicality</u>: As a person who received numerous telephone solicitations from Defendants within a 12-month period, who did not have an established business

relationship or personal relationship with Defendant, and who did not provide Defendants prior express invitation or permission to receive telephone solicitations, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

88.    Plaintiff's claims are typical of the claims of the members of the class. Plaintiff has had to suffer the burden of receiving text messages to his cellular telephone from an ATDS. Thus, his injuries are typical to Class Members. As it did for all members of the class, Defendants used an ATDS to deliver a text message to Plaintiff's cellular telephone number.

89.    Plaintiff's claims, and the claims of the members of the class, originate from the same conduct, practice and procedure on the part of Defendant.

90.    Plaintiff's claims are based on the same theories, as are the claims of the members of the class.

91.    Plaintiff and Class Members were harmed by the acts of Defendants in at least the following ways: Defendants harassed Plaintiff and Class Members by illegally texting their cellular phones using an ATDS. Plaintiff and the Class were damaged thereby.

92.    Adequacy: Plaintiff is qualified to, and will fairly and adequately protect the interests of the members of the class with whom he is similarly situated, as demonstrated herein. Plaintiff acknowledges that he has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member.

93.    Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the class.

94.    Plaintiff will vigorously pursue the claims of the members of the class.

95.    Plaintiff has retained counsel experienced and competent in class action litigation. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the

proposed class counsel is experienced in handling clams involving consumer actions and violations of the TCPA.

96.     Plaintiff's counsel will vigorously pursue this matter.

97.     Plaintiff's counsel will assert, protect and otherwise represent the members of the class.

98.     Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

99.     <u>Predominance</u>: The questions of law and fact common to the members of the class predominate over questions that may affect individual members of the class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

100.    <u>Commonality</u>: There are common questions of law and fact as to all members of the Class, including but not limited to the following:

    a.      What is Defendants' conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

    b.      Whether, within the four years prior to the filing of this Complaint, Defendants or its agents sent more than one text message to the members of the Class whose telephone numbers were on the DNC and who had neither an established business relationship nor personal relationship with Defendant;

    c.      Whether Defendants obtained prior express written consent to send the text messages to Plaintiff or the Class members' telephones;

    d.      Whether, within four years prior to the filing of this Complaint, Defendants or its agents used an ATDS as defined by the TCPA to send text messages to Class Members;

    e.      Whether Defendants' conduct violated the TCPA;

    f.      Whether Plaintiff and the Class members were damaged thereby, and the

extent of damages for such violation; and

g.    Whether Defendants should be enjoined from engaging in such conduct in the future; and

h.    The availability of statutory penalties.

99.    <u>Superiority</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

•    If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.

•    The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class, and could substantially impair or impede their ability to protect their interests.

•    The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

•    These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class.

•    The damages suffered by each individual member of the class may be relatively modest, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class to redress the wrongs done to them.

•    Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

•    The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.

•    There will be little difficulty in the management of this action as a class action.

100.    Defendants have acted or refused to act on grounds generally applicable to the

members of the class, making final declaratory or injunctive relief appropriate.

101.    Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendants' unlawful and wrongful conduct.  Absent a class action, the Class will continue to face the potential for irreparable harm.  In addition, these violations of law will be allowed to proceed without remedy and Defendants will likely continue such illegal conduct.  Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

102.    A class action is a superior method for the fair and efficient adjudication of this controversy.  Class-wide damages are essential to induce Defendants to comply with federal and California law. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

103.    Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful conduct.

104.    This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

## COUNT I

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47 U.S.C. §§ 227, ET SEQ.

105.    Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

106.    Defendants and/or its agents placed unsolicited text messages to Plaintiff and the other members of the TCPA Class using an ATDS.

107.    Defendants made these text messages *en masse* without the consent of Plaintiff

and the other members of the TCPA Class.

108.  Defendants' conduct was negligent, willful or knowing.

109.  Defendants knew or should have known that it did not have prior express written consent to send these text messages in violation of the TCPA.

110.  Defendants negligently, willfully, and/or knowingly allowed unsolicited text messages to be sent to Plaintiff and Class members. For instance, Defendants could have determined from a review of its own business records that it did not have the required prior express written consent to contact Plaintiff and/or Class members, yet disregarded such information and sent the illegal and unwanted solicitation text messages to Plaintiff and the Class.

111.  The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq.*

112.  Defendants have, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendants' violations, Plaintiff and each of the Class Members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and an award of $1,500.00 in statutory damages for each and every willing or knowing violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

113.  Plaintiff and the Class members are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by sending texts, except for emergency purposes, to any cellular telephone numbers using an ATDS in the future.

114.  Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by utilizing an ATDS to make advertising and marketing texts to Plaintiff's cellular telephone number without prior express written consent.

115.  As a result of Defendants' violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47

C.F.R. § 64.1200(a)(2), Plaintiff, and the members of the class, are entitled to damages in an amount to be proven at trial.

116.   Plaintiff also seeks an award of attorneys' fees and costs on behalf of Plaintiff and the Class.

## COUNT II

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT REGARDING THE NATIONAL DO-NOT CALL REGISTRY

### 47 C.F.R. § 64.1200(C)

117.   Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

118.   Plaintiff and members of the DNC Class received more than one marketing text message within a 12-month period, sent by or on behalf of Defendant, for the express purpose of marketing Defendants' goods and/or services without their written prior express consent.

119.   At all relevant times, Defendants knew or should have known that its conduct as alleged herein violated the TCPA.

120.   Defendants sent unsolicited and unauthorized text messages to the cellular telephones of Plaintiff and the Class members, cellular telephones which were registered with the National Do-Not Call Registry, for the purpose of marketing goods and/or services to Plaintiff and the Class.

121.   Defendants knew that it did not have prior express written consent to send these text messages, and knew or should have known that it was sending text messages to cellular numbers on the National Do-Not Call Registry in violation of the TCPA.

122.   Defendants willfully or knowingly allowed text messages to be sent to Plaintiff's and Class members' cellular telephone numbers on the National Do-Not Call Registry. For instance, Defendants could have determined from a review of its own business records and the National Do-Not Call Registry that it could not contact Plaintiff and/or Class members yet disregarded such information and placed illegal and unwanted

solicitation text messages.

123.  Defendants' text messages caused Plaintiff and members of the DNC Class actual harms including, but not limited to, invasion of their personal privacy, aggravation, inconvenience, nuisance and disruption in their daily lives, reduction in cellular telephone battery life, data, and loss of use of their cellular telephones.

124.  Because Defendants knew or should have known that Plaintiff's and Class Members' cellular telephone numbers were on the National Do-Not Call Registry, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

125.  As a result of Defendants' violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every willful or knowing violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C) or in the alternative an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

126.  Plaintiff and the Class are also entitled to and seek injunctive relief, pursuant to 47 U.S.C. § 227(c)(5)(A), prohibiting such conduct in the future.

127.  Plaintiff also seeks an award of attorneys' fees and costs on behalf of Plaintiff and the Class.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully requests the following relief:

•     An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as Class Counsel.

•     Injunctive relief prohibiting Defendants from engaging in such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A);

- Statutory damages of $500.00 for Plaintiff and each member the Class for each and every one of Defendants' violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(b)(3)(B);

- Statutory damages of $1,500.00 for Plaintiff and each member the Class for each and every one of Defendants' willful or knowing violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(b)(3)(C);

- An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

- Pre-judgment and post-judgment interest on monetary relief; and

- All other and further relief as the Court deems necessary, just, and proper.

///

///

**DEMAND FOR JURY TRIAL**

128.  Plaintiff, individually and on behalf of the Class, demands a jury trial on all issues so triable.

Dated: June 30, 2023                    Respectfully submitted,

                                       **KAZEROUNI LAW GROUP, APC**

                                       By: /s/ Gustavo Ponce
                                       David J. McGlothlin, Esq.
                                       Mona Amini, Esq.
                                       Gustavo Ponce, Esq.
                                       *Attorneys for Plaintiff*